THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| BRET TUCKER FANNING<br>individually and as the Surviving<br>Spouse and Next of Kin of<br>Shanda Fanning,<br><br>     Plaintiff,<br><br>        v.<br><br>Honeywell Aerospace, a division of<br>Honeywell International, Inc., and<br>Honeywell International Inc.<br><br>     Defendants | ) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) | Civil No.:_____<br>JURY DEMANDED |

## COMPLAINT

COMES NOW the Plaintiff by and through his lawyers Lannom & Williams, PLLC, and Kreindler & Kreindler LLP, who state the following:

## INTRODUCTION

1.  On August 14, 2013, at approximately 4:47 A.M., an Airbus A300-600F, Serial Number 841, bearing FAA registration number N155UP ("subject aircraft"), which was being operated as United Parcel Service (UPS) Flight 1354 ("subject flight"), was on approach to Runway 18 at the Birmingham-Shuttlesworth International Airport, in Birmingham Alabama when it impacted the ground and crashed.

1

2.      Plaintiff's decedent, Shanda Fanning, was the First Officer on board the subject aircraft and sustained severe physical and emotional injuries and was killed as a result of the impact and crash.

3.      The subject aircraft incorporated an Enhanced Ground Proximity Warning System ("EGPWS"), designed and manufactured by the Honeywell Defendants,[1] is designed to provide aural warnings to pilots when the aircraft's flight path will conflict with terrain or a ground obstacle.

4.      The subject EGPWS system only issued such a "Too Low Terrain" warning one second *after* initial ground impact.

### ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

5.      Plaintiff, Bret Fanning, is the surviving spouse and next of kin of Shanda Fanning.

6.      Plaintiff is a domiciliary and resident of the State of Tennessee.

7.      Shanda Fanning is also survived by her mother and father Wilma Carney and Eph Carney, and brother Chris Carney.

8.      Defendant Honeywell International Inc. ("Honeywell") is a corporation organized under the law of Delaware, having its headquarters and

---

[1] The "Honeywell Defendants" or "Defendants" include Defendants Honeywell International Inc., Honeywell Aerospace, a division of Honeywell International, Inc. collectively and each of them, as identified *infra*, ¶¶ 8-10.

2

principal place of business in New Jersey, and engaging in business in Tennessee. It is a resident and domiciliary of either Delaware or New Jersey.

9. Defendant Honeywell Aerospace ("Honeywell Aerospace") is a division and business unit of Honeywell International Inc. ("Honeywell Aerospace") upon information and belief with its headquarters in Phoenix, Arizona and its principal place of business in Redmond, Washington, and engaging in business in Tennessee.

10. Defendants Honeywell and Honeywell Aerospace are collectively referred to as the "Honeywell Defendants" herein.

11. Plaintiff has damages greater than $75,000.

12. Subject matter jurisdiction of this Court is based on complete diversity pursuant to 28 U.S.C. § 1332.

13. Venue in this District satisfies the requirements of 28 U.S.C. § 1391, in that, each of the Honeywell Defendants are subject to personal jurisdiction in this District because they each conduct longstanding and continuous business in Tennessee.

14. Upon information and belief, Defendant Honeywell through its Honeywell Aerospace division designed, manufactured, tested, marketed, sold and provided warnings, cautions, bulletins, alerts and other product safety information

3

concerning the subject EGPWS .

15.     The EGPWS on the subject aircraft was a Honeywell MK V EGPWS,

Part Number 965-0976-003-212 mod 212, Serial Number 25312, Hardware Mod 11

with terrain database version 467.  The EGPWS is a Terrain Awareness and

Alerting system designed to provide terrain alerting.  The EGPWS uses aircraft

inputs including geographic position, attitude, altitude, airspeed, and airport runway

databases to predict a potential conflict between the aircraft flight path and terrain

or an obstacle.  A terrain or obstacle conflict should result in the EGPWS providing

a visual and audio caution or warning alert.

16.     The Honeywell Mark V EGPWS Pilot's Guide states:

> "Because the overwhelming majority of 'Controlled Flight Into
> Terrain' (CFIT) accidents occur near an airport, and the fact that
> aircraft operate in close proximity to terrain near an airport …
> the terrain database contains higher resolution grids for airport
> areas….  With the use of accurate GPS or FMS information, the
> EGPWS is provided present position, track, and ground speed.
> With this information the EGPWS is able to present a graphical
> plan view of the aircraft relative to the terrain and advise the
> flight crew of a potential conflict with the terrain or obstacle.
> Conflicts are recognized and alerts provided when terrain
> violates specific computed envelope boundaries on the projected
> flight path of the aircraft.  Alerts are provided in the form of
> visual light annunciation of a caution or warning, audio
> annunciation based on the type of conflict, and color enhanced
> visual display of the terrain or obstacle relative to the forward
> look of the aircraft."

4

17.     The Technical Standard Order (TSO), which sets forth the minimum

standard the Honeywell EGPWS had to comply with, states that the EGPWS:

> "… must provide a suitable alert when it determines that the airplane is significantly below the normal approach flight path to a runway.  Approximately one third of all CFIT accidents occur during the final approach phase of flight, when the airplane is properly configured for landing and descending at a normal rate.  For a variety of reasons, which include poor visibility, night time operations, loss of situational awareness, operating below minimums without adequate visual references and deviations from the published approach procedures, many airplanes have crashed into the ground short of the runway.  A means to detect and alert the flight crew to this condition is an essential safety requirement of this TSO."

18.     The Honeywell EGPWS has several modes of operation.  EGPWS

"Mode 1, Excessive Decent Rate" is supposed to provide excessive descent rate

alerts with respect to altitude above the ground (AGL) and is active for all phases of

flight.  It will produce a "Sinkrate, Sinkrate"  warning below 2450 feet AGL and

above 10 feet AGL, and at altitude decent rates from 964 feet per minute (FPM) to

10,000 FPM as described below in Figure 1.



**Figure 1 Sinkrate Curve Specification**

19.  The EGPWS "Mode 1, Excessive Decent Rate" will produce a "Pull

Up" warning below 2450 feet AGL and above 10 feet AGL, and at altitude decent

rates from 1482 to 10,000 FPM as described below in Figure 2.

6



**Figure 2 Pull Up Curve Specification**

20.     The EGPWS also has a "Terrain Clearance Floor" (TCF) mode which
enhances the basic GPWS Modes by alerting the pilot of descent below a defined
"Terrain Clearance Floor," regardless of the aircraft configuration.  The TCF
feature is supposed to add an additional element of protection by alerting the pilot
of possible premature descent.  This is intended for non-precision approaches, such
as the approach the subject aircraft was on, and is based on the current aircraft
position relative to the nearest runway.  Among other things, the TCF feature is to
provide protection against landing short events.  The TCF will issue an alert  "Too
Low, Terrain" based on the aircraft's Radio Altitude below 700 feet AGL and above

7

10 feet AGL and distance to the nearest runway as described below in Figure 3.



**Figure 3 TFC Alert Curve**

21.     The subject EGWPS also has a "Terrain Look Ahead Alerting" feature which is supposed to provide the ability to look ahead of the aircraft and detect terrain or obstacle conflicts with greater alerting time. This is accomplished based on aircraft position, flight path angle, track, and speed relative to the terrain database image forward of the aircraft.

22.     During the approach to land at the Birmingham airport, the subject EGPWS issued a "Sinkrate, Sinkrate" alert at time 4:47:24.5 when the subject aircraft was only 195.8 feet AGL, was about 1.4 nautical miles (NM) from the

8

runway, and had a selected vertical decent rate of approximately 1500 FPM; and a rate of descent based on EGPWS radio altitude of approximately 2143 FPM.

23.     At approximately 1500 FPM descent, the "sink rate" warning alert should be issued at approximately 350 feet AGL according to Figure 1, which would have been at approximately 4:47:22 and at a distance of 1.5 NM from the runway.

24.     Upon information and belief, the EGPWS had delays of approximately 2.16 seconds in generating the "Sinkrate, Sinkrate" alert.

25.     The EGPWS "sink rate" envelope was only activated at approximately 294 feet AGL at time 4:47:23.6 and did not issue an alert until 195.8 AGL feet, at time 4:47:24.4 and at a distance of 1.38 NM from the runway.

26.     Upon information and belief, at a 2143 FPM descent based on EGPWS radio altitude, the "sink rate" warning alert should be issued at approximately 700 feet AGL or lower according to Figure 1, which would have occurred at approximately time 4:47:12 or later, and a distance of 1.9 NM or less from the runway.

27.     Upon information and belief, at approximately 2143 FPM descent based on EGPWS radio altitude, the "Pull Up" warning alert should be issued at approximately 450 feet AGL or lower according to Figure 2, which would have

9

occurred at approximately time 4:47:18.5 or later, and at a distance of 1.65 NM or less from the runway.

28.   No "Pull Up" warning alert was issued.

29.   At time 4:47:32.5 and at 1.1 NM from the runway, the subject aircraft impacted a tree and thereafter crashed.

30.   The subject EGPWS issued a "Too Low Terrain" alert one second after initial impact at time 4:47:33.5 when the subject aircraft was 1.0 NM from the runway.

31.   Upon information and belief, with the appropriate warning, a successful climb maneuver could have been accomplished as late as time 4:47:29.36 at approximately 49 feet above the tree and approximately 1.2 NM from the runway.

32.   The subject EGWPS was designed, manufactured, and sold by the Honeywell Defendants without, among other things, the ability to provide a timely "Sinkrate", "Pullup" or "Too Low Terrain" warning alerts to the flight crew of the Subject Flight as it flew the instrument approach to Runway 18 at the Birmingham airport.

33.   The Honeywell Defendants failed to provide adequate warnings of the defective and dangerous conditions created by their EGWPS.

10

34. The Honeywell Defendants misrepresented the capabilities and performance of the EGWPS, particularly its ability to provide adequate safety warning alerts of terrain and obstacles in the flight path of the subject aircraft.

35. As a direct and proximate result of the acts and/or omissions of the Honeywell Defendants, Plaintiff, as well as all lawful beneficiaries, have suffered and will continue to suffer past and future loss of the pecuniary value of Shanda Fanning's life, including loss of consortium, loss of services, loss of financial support, loss of emotional support, loss of companionship, loss of comfort, loss of society, loss of guidance, loss of solace, loss of protection, loss of attention, loss of care, loss of training, loss of cooperation, loss of affection, loss of love, loss of spousal relations, and such other and further incidental and/or other damages as Plaintiff, as well as all lawful beneficiaries, may have sustained which were proximately caused by the crash and wrongful acts described herein. Altogether, these damages are above the sum of $75,000.

36. As a direct and proximate result of the acts and/or omissions of the Honeywell Defendants, Shanda Fanning was damaged as follows: She sustained serious and painful personal injuries resulting in physical pain and mental suffering, and ultimately death; her next of kin incurred funeral expenses; her next of kin sustained lost earnings and lost earning capacity; and, such other damages as

11

Shanda Fanning may have sustained which were proximately caused by the crash and wrongful acts described herein. Altogether, these damages are above the sum of $75,000.

37.     The aircraft crash, wrongful death of Shanda Fanning, and resulting damages described herein were a direct, foreseeable, legal and proximate result of the negligent, reckless, and/or wanton acts and/or omissions of the Defendants, and entitle Plaintiffs to an award of punitive damages, in an amount in excess of $75,000.

## CAUSES OF ACTION

### Count I
### Negligence
### *Against the Honeywell Defendants*

38.     The allegations in paragraphs 1 to 37 above are adopted and incorporated by reference herein.

39.     Before the sale of the subject aircraft with its EGPWS the Defendants, and each of them, owed a duty to use reasonable care in the design, manufacture, testing, marketing, sale, distribution, installation and/or support of the subject EGPWS.

40.     The Defendants negligently and/or recklessly breached their duties of care by failing to exercise reasonable care under the circumstances, including, but

12

not limited to the following negligent and/or reckless acts or omissions:

   a.   designing, manufacturing, assembling, testing, and selling the
        subject EGPWS such that it did not provide the necessary and
        timely aural and visual warnings to avoid terrain as required,
        and specifically did not provide such aural and visual warnings
        as represented and warranted by the Defendants;

   b.   designing, manufacturing, assembling, testing, and selling the
        subject EGPWS without proper and adequate warnings of the
        unsafe and dangerous conditions of the EGPWS and of the
        limitations of the EGPWS;

   c.   designing, manufacturing, assembling, testing, and selling the
        subject EGPWS without proper and adequate instructions for
        the use of the subject EGPWS;

   d.   designing, manufacturing, assembling, testing, and selling the
        subject EGPWS such that it did not conform with applicable
        minimum design standards;

   e.   designing, manufacturing, assembling, testing, and selling the
        subject EGPWS such that its design did not incorporate
        available technology and/or art that would have provided the

13

necessary and timely aural and visual warnings of terrain as
required;

f.     designing, manufacturing, assembling, testing, and selling the
subject EGPWS knowing that the design of the EGPWS was
outdated and caused the EGPWS to be unreasonably dangerous;
and

g.     failing to properly support the post-sale Honeywell EGPWS
product by, among other things, not issuing adequate warnings,
mandatory service bulletins or seeking Airworthiness Directives
to warn of the dangerous conditions posed by the subject
EGPWS and/or otherwise failing to adequately warn and require
that product improvements that would provide improved timely
aural and visual warnings of terrain be incorporated into the
subject aircraft.

41.     As the direct and proximate result of one or more of the aforesaid
negligent and/or reckless acts or omissions of the Defendants, in breach of their
duty owed, the subject aircraft was caused to, and did, violently crash into the
ground near the Birmingham International Airport, and as a consequence thereof,
Shanda Fanning was severely injured and died.

14

## Count II
### Strict Liability
#### *Against the Honeywell Defendants*

42.     The allegations in paragraphs 1 to 41 above are adopted and incorporated by reference herein.

43.     The Defendants manufactured and/or sold the EGPWS described above.

44.     The Defendants were engaged in the business of manufacturing and selling the EGPWS described above.

45.     The EGPWS was defective or unreasonably dangerous at the time of sale because it:

        a.     did not provide the necessary and timely aural and visual warnings to avoid terrain as required, and specifically did not provide such aural and visual warnings as represented and warranted by the Defendants;

        b.     lacked proper and adequate warnings of the unsafe and dangerous conditions of the EGPWS and of the limitations of the EGPWS;

        c.     lacked proper and adequate instructions for the use of the subject EGPWS;

15

d.　　did not conform with applicable minimum design standards;

e.　　did not incorporate available technology and/or art that would have provided the necessary and timely aural and visual warnings of terrain as required;

f.　　was sold by Defendants in an outdated condition; and

g.　　was not properly supported by, among other things, not issuing adequate warnings, mandatory service bulletins or seeking Airworthiness Directives to warn of the dangerous conditions posed by the subject EGPWS and/or otherwise failing to adequately warn and require that product improvements that would provide improved timely aural and visual warnings of terrain be incorporated into the subject aircraft.

46.　　For the reasons cited in paragraph 45 above, the EGPWS was defective or unreasonably dangerous to a person who used or might reasonably be expected to use the Honeywell EGPWS.

47.　　Shanda Fanning, as the First Officer of the UPS flight in the Subject Aircraft on which the subject EGPWS was installed, was a reasonably foreseeable user of the Honeywell EGPWS.

48.　　The Honeywell EGPWS was expected to and did reach Shanda

Fanning without a substantial change in its condition.

49.     As a direct and proximate result of the defective and unreasonably

dangerous nature of the subject EGPWS, Shanda Fanning was killed, and Plaintiff,

the lawful beneficiaries of the Estate of Shanda Fanning, and the Estate of Shanda

Fanning suffered injuries, damages, and losses as previously alleged.

## Count III
### Breach of Warranty
#### *Against the Honeywell Defendants*

50.     The allegations in paragraphs 1 to 49 above are adopted and

incorporated by reference herein.

51.     The Defendants are merchants engaged in the business of designing,

manufacturing, testing, assembling, marketing, selling, supplying, installing and

supporting, the subject EGPWS.

52.     The Defendants described and advertised the EGPWS for sale.  Such

descriptions and advertisements included, but were not limited to, advertising

brochures, instructions, manuals, graphs, specification sheets, and other product

statements.  These descriptions and affirmations concerning the EGPWS resulted in

express warranties that the EGPWS would perform as described and was safe for its

intended use.

17

53.     In addition, upon information and belief, the Defendants provided an express warranty for the subject EGPWS.

54.     These descriptions, affirmations, and express warranties for the EGPWS became part of the bases of the bargain of its sale, and said warranties ran to Plaintiff's decedent Shanda Fanning.

55.     Through their sales activities the Defendants impliedly warranted that the EGPWS was fit for its intended purpose, properly labeled and packaged for sale and installation, and conformed to the promises and affirmations of fact made on its containers and labels.  These implied warnings ran to the Plaintiff's decedent Shanda Fanning.

56.     Through their sales activities the Defendants impliedly warranted that their goods were fit for their particular purpose, and knew that their skill and judgment would be relied upon and were in fact relied upon by the purchaser of their individual goods.  These implied warranties ran to the Plaintiff's decedent Shanda Fanning.

57.     The Defendants' statements that the EGPWS was not defective and was safe for its intended use were false in that the EGPWS was unreasonably dangerous in that it:

        a.     did not provide the necessary and timely aural and visual

18

warnings to avoid terrain as required, and specifically did not provide such aural and visual warnings as represented and warranted by the Defendants;

b.  lacked proper and adequate warnings of the unsafe and dangerous conditions of the EGPWS and of the limitations of the EGPWS;

c.  lacked proper and adequate instructions for the use of the subject EGPWS;

d.  did not conform with applicable minimum design standards;

e.  did not incorporate available technology and/or art that would have provided the necessary and timely aural and visual warnings of terrain as required;

f.  was sold by Defendants in an outdated condition; and

g.  was not properly supported post-sale by, among other things, not issuing adequate warnings, mandatory service bulletins or seeking Airworthiness Directives to warn of the dangerous conditions posed by the subject EGPWS and/or otherwise failing to adequately warn and require that product improvements that would provide improved timely aural and

19

visual warnings of terrain be incorporated into the subject aircraft.

58.     As a result, the Defendants' statements, descriptions and affirmations that the subject EGPWS would perform as described and was safe for its intended use were actually false

59.     Consequently, the Defendants breached their express warranties and the implied warranties of merchantability and fitness for particular purpose and the implied warranties arising from the course of dealings and usage of trade.

60.     As a direct result of the foregoing breach of warranties, the subject aircraft crashed resulting in the death of Shanda Fanning.

61.     As a direct and proximate cause of Defendants breach of warranty, Shanda Fanning was killed, and Plaintiff, the lawful beneficiaries of the Estate of Shanda Fanning, and the Estate of Shanda Fanning suffered injuries, damages, and losses as previously alleged.

## DEMAND

**WHEREFORE**, the Plaintiff prays unto the court that he have and recover judgment against the Defendants as follows:

1.     That the Defendants be served with process and be required to answer within the time prescribed by law;

20

2. That Plaintiff be awarded a judgment against Defendants in a fair and reasonable amount to be determined by a jury in excess of the sum of Seventy-Five Thousand and 00/100 Dollars ($75,000.00) for all elements of compensatory damages for the wrongful death of Shanda Fanning, including but not limited to damages for physical pain and mental suffering, the anguish and emotional distress resulting from knowledge of impending death or serious injury, funeral expenses, the pecuniary value of Shanda Fanning's life, loss of her earnings and earning capacity, and loss of intangible benefits of the familial relationship Bret Tucker Fanning, as surviving spouse, would have continued to enjoy throughout their lives, including spousal consortium, loss of services, loss of financial support, loss of emotional support, loss of companionship, loss of comfort, loss of society, loss of guidance, loss of solace, loss of protection, loss of attention, loss of care, loss of training, loss of cooperation, loss of affection, loss of love, loss of spousal relations with and in regard to Bret Tucker Fanning and his deceased wife, Shanda Fanning, as well as any and all such further incidental and/or other damages incurred or suffered by Shanda Fanning, her surviving spouse Bret Tucker Fanning, and/or any other person entitled to recovery for the wrongful death of Shanda Fanning.

3. For an award of punitive damages against Defendants.

4. Pursuant to T.C.A. Section 29-28-107 and only because said statute

21

requires such, the Plaintiff states that he is seeking an amount of $10,000,000.00 in compensatory damages, and $10,000,000.00 in punitive damages.

5.  For both pre judgment and post judgment interest and for the costs of this action.

6.  That a jury of six (6) be impaneled to try this cause.

7.  For such other and further relief as to which the Court may deem to be just and proper.

<div style="margin-left: 40%;">

Respectfully Submitted,

LANNOM & WILLIAMS, PLLC

B. KEITH WILLIAMS, #16339
JAMES R. STOCKS, #25850
Attorneys for Plaintiff
137 Public Square
Lebanon, TN 37087
(615) 444-2900 - phone
(615) 444-6516 - fax
keithwilliams@lannomwilliams.com

-and-

</div>

22

*Pending admission pro hac vice,*

KREINDLER & KREINDLER, LLP

DANIEL O. ROSE
EVAN KATIN-BORLAND
Attorneys for Plaintiff
750 Third Avenue
New York, NY 10017
(212) 687-8181 - phone
(212) 972-9432 - fax
drose@kreindler.com
ekatinborland@kreindler.com

I, B. Keith Williams, am surety for all of the costs of this cause.

B. Keith Williams

23