UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **BRET TUCKER FANNING, ET AL.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | No. 3:14-01650 |
| v. ) | Judge Campbell/Brown |
| ) | |
| **HONEYWELL AEROSPACE, a division** ) | |
| **of Honeywell International, Inc.; and** ) | |
| **Honeywell International, Inc.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM
## IN SUPPORT OF ORDER

The parties submitted a Joint Statement of Issues (the joint statement), attached herewith at Exhibit C (Ex. C),[1] pertaining to the protective order with respect to which they were unable to come to an agreement. Plaintiff presented the "key disagreements" in the joint statement in the form of the five issues enumerated below. The Magistrate Judge considered each of these issues in formulating the protective order at Doc. 122 as discussed below.

1) **Whether Honeywell must produce all information relevant to the function of Mode 1, Mode 2b, TCF, and FLTA in the -212 software, or whether it need only produce the information relating to the algorithms for Mode 1, Mode 2B, TCF, and FLTA.**

Plaintiff argues that he "believes . . . the June 30, 2016 Order contemplates production of all information **relevant** to the function of Mode 1, Mode 2B, TCF and FLTA in the -212 software . . . so that the functioning of those modified can be fully understood and analyzed." (Ex. C, p. 3)(bold added) Plaintiff adds that he "must have all information **relevant** to the function of the

---

[1] Reference to Exhibits herein are to those attached herewith to the basic order to which this Memorandum in Support of Order pertains.

**relevant** modes, not just the information for the algorithms themselves, in order to fully assess those modes and functions accurately." (Ex. C, p. 4)(bold added)

Honeywell argues that they "believe it is clear from the June 30, 2016 Order, that the only sections of the SRD, SDRD and source code that must be produced are those sections for Modes 1 and 2b, FLTA, and TCF," but Plaintiff "now seeks to expand production to anything in the SRD, SDRD and source code '**relevant** to the function' of Modes 1 and 2B, FLTA and TCF." (Ex. C, p. 9)(bold added) Honeywell asserts that "[s]uch a broad and vague expansion of what is to be produced is contrary to this Court's June 30, 2016 Order . . . ." (Ex. C, p. 9) Honeywell "seek[s] a compromise," *i.e.*, "that additional sections of the SRD, SDRD and source code . . . be produced by agreement of the parties or further order of this Court," but that "such determinations are premature until Plaintiff and his expert have inspected the specific sections of the SRD, SDRD and source code ordered to be produced." (Ex. C, p. 9)

The following discussion occurred between the Magistrate Judge and attorney Daniel Rose, Plaintiff's counsel, during a telephone conference with the parties on June 27, 2016:

> THE COURT: . . . . Now, you talk about wanting four things. . . . I want to be sure I know what you're asking for.
>
> MR. ROSE: Well, Your Honor . . . I know what I'm not asking for, and that is anything to do with the other four – I guess there are nine modes. I think there's 13 all together. We absolutely don't want to pursue that. And we're happy to . . . be reasonable in how we go about figuring out how to do that . . . .
>
> . . .
>
> . . . . I have zero interest in getting unnecessary information about any of the other modes. . . . [W]e have no interest in the other modes.

(Doc. 109, pp. 51-52 of 68)

2

The Magistrate Judge characterized the nature of Plaintiff's discovery demands in his subsequent June 30, 2016 order as follows: "plaintiff seeks to compel production of Honeywell's Systems Requirement Document (SRD), Software Design Requirements Document (SDRD), the source code for EGPWS Modes 1 and 2B, as well as the EGPWS Forward Looking Terrain Avoidance (FLTA), and Terrain Clearance Floor (TCF) advanced functions."  (Doc. 69, p. 3)  In granting Plaintiff's motion to compel, the Magistrate Judge "hasten[ed] to add that th[e] order to produce pertain[ed] to the SRD, SDRD, and source code for Modes 1 and 2b, FLTA, and TCF . . . ."  (Doc. 69, p. 6)

The Magistrate Judge made no mention of information "**relevant** to the function of Mode 1, Mode 2B, TCF and FLTA in the -212 software" in his June 30, 2016 order.  (bold added)  Plaintiff also did not object to the Magistrate Judge's characterization of their discovery demands in his June 30, 2016 order.  Finally, the Magistrate Judge's characterization of Plaintiff's discovery demands was consistent with Mr. Rose's statements during telephone conference that was the subject of that order.  The bugaboo here is, of course, Plaintiff's after-the-fact use of the word "relevant" which is, as Honeywell asserts, "a broad and vague expansion of what is to be produced . . . ."

One does not have to have a Ph.D. in computer technology to know that the functioning of one component of a complex digital system may well affect/be affected by the functioning of another equally complex component – and in a system with multiple complex components such as the one in this case, the "relevance" of information shared between and among the multiple components could be virtually limitless.  In short, ordering the discovery of "all information **relevant** to the function of Mode 1, Mode 2B, TCF and FLTA in the -212 software" would be tantamount to a court-sanctioned discovery fishing trip.  (bold added)

Honeywell's proposed compromise has merit.  Although Honeywell's suggested compromise

3

may require Honeywell to "host" on-site discovery on more than a single occasion, Honeywell's compromise is reasonable and offers the best chance to complete discovery in an orderly manner. Accordingly, the protective order shall require Honeywell to provide Plaintiff with the SRD, SDRD, source code for EGPWS Modes 1 and 2B, as well as TCF, and FLTA functions – and nothing more. In the event Plaintiff feels that additional discovery is required beyond the on-site evaluation covered by the protective order, Plaintiff shall support his request with an affidavit from his expert, Mr. Glenn Haskins, stating with specificity what additional discovery is required, and why.

> **2) Whether, in light of the fact that Honeywell will not be providing Plaintiff with a complete and executable version of the -212 software source codes, Honeywell should make the changes to software code that Plaintiff requires.**

Plaintiff asserts that, because Honeywell "cannot provide Plaintiff's counsel and expert(s) with an executable verison of its software that c[an] be . . . run on a desktop computer," their "expert will not be able to study, review, analyze and alter the software himself and conduct simulations using that software." (Ex. C, pp. 4-5) Plaintiff asserts that, under the circumstances described above, "Honeywell, not Plaintiff's expert will have to make the necessary changes to the source code since Plaintiff is not being produced a complete and executable version of the source code to study, review, analyze and alter," *i.e.*, that "Plaintiff's expert can no longer make the changes to the software himself as originally envisioned, he is unable to make the software source code changes necessary to create . . . altered version," apparently because Honeywell, not he, has a "precise understanding of where each requirement is embodied in the source code . . . ." (Ex. C, p. 5) Finally, Plaintiff complains that Honeywell will "take no responsibility for creating a functioning version of source code after Plaintiff requests his changes, even though the failure of the source code to function could be based on the way the changes made by Plaintiff interact with portions of the

4

source code that were not produced to Plaintiff's expert." (Ex. C, p. 6)

Honeywell argues in response that it has "offer[ed] the use of its already existing test station to run Plaintiff's modified source code on an EGPWS and then run flight profiles, including using the data downloaded by the accident EGPWS." (Ex. C, p. 10) Honeywell asserts that Plaintiff "no longer is seeking production of the source code,[2] nor does Plaintiff want his expert to make changes to the -212 source code himself." (Ex. C, p. 10) Honeywell goes on to note that "the source code is made up of text files, which are modified simply by editing the text. This is what Plaintiff has requested his expert be allowed to do." (Ex. C, p. 10) Honeywell asserts further that "Plaintiff wants to review the sections of the SRD and SDRD, and then . . . tell Honeywell's engineers to change the 'requirements and parameters' set forth in the SRD and SDRD for the -212 EGPWS, that Plaintiff wants "Honeywell to determine how to modify the -212 source code to implement the 'requirements and parameters' specified by Plaintiff's expert," and for "Honeywell to ensure that any such changes result in a working and executable version of EGPWS source code." (Ex. C, p. 10)

Plaintiff cannot shift his burden to Honeywell simply by saying he no longer wants access to the System Source Code and, because he has voluntarily foregone access to System Source Code, he now is unable to identify what software changes he would like to make to execute simulated flight profiles. Honeywell is responsible to make the opportunity available to Plaintiff's expert to study, review, and analyze the SRD, SDRD, and Software Source Code, to make the specific change(s) to the software code requested by Plaintiff's expert, to run simulated flight profiles to demonstrate the effect(s) that the/those specified change(s) would have, to verify before and after

---

[2] The redlined draft of the agreed protective order attached hereto at Ex. C appears to show that Plaintiff, not Honeywell, deleted every reference to the source code that Plaintiff has consistently demanded.

5

each simulated flight profile that the change(s) made to the software was/were what Plaintiff's expert requested, and to document the effect of the change(s) made. It is not Honeywell's responsibility to determine what software changes to make based on its familiarity with the SRD and/or SDRD, nor is Honeywell responsible to ensure that such change(s) requested by Plaintiff's expert result(s) in an executable version of the modified -212 EGPWS software. In short, the discovery at issue is Plaintiff's, not Honeywell's. The protective order will reflect the responsibilities noted above.

> **3) Whether Honeywell should be required to make changes to the EGPWS terrain database requested by Plaintiff.**

Plaintiff asserts that Honeywell should be required to make changes to the EGPWS terrain database as part of discovery, arguing that Honeywell merely opposes their request "as another way to prevent Plaintiff from proving his case." (Ex. C, pp. 6-7) Honeywell argues that the terrain database should not be addressed in the protective order, because it is "far outside the scope of Plaintiff's motion to compel," Plaintiff does not allege that the database was defective, and that the Magistrate Judge's June 30, 2016 order "does not require production of, or changes to, the terrain database." (Ex. C, p. 12)

Although Plaintiff referred to the EGPWS terrain database in passing in their motion to compel (Doc. 44, p. 2) and supporting memorandum of law (Doc. 44-2, pp. 1, 13), they made no mention of any need to examine, evaluate, and/or modify the database. Mr. Haskins made no mention of having to examine/alter the terrain database in his affidavit in support of Plaintiff's motion to compel. (Doc. 44-4) Plaintiff also made no mention of the terrain database in their reply to Honeywell's response in opposition to the motion to compel (Doc. 50), nor did Mr. Haskins make any reference to the terrain database in his affidavit accompanying Plaintiff's reply (Doc. 50-2).

6

Further, Plaintiff made no mention of the need to make changes to the EGPWS terrain database during the June 27, 2016 telephone conference with the Magistrate Judge (Doc. 109), nor did Plaintiff mention it in his response (Docs. 82-83) to Honeywell's July 14, 2016 motion to review the Magistrate Judge's June 30, 2016 order (Doc. 74).

Honeywell's opposition to Plaintiff's request that Honeywell be required to make changes to the EGPWS terrain database is well taken. Accordingly, Honeywell shall not be required to make any changes to the terrain database, and all references to the terrain database have been deleted from the protective order.

> **4)** **Whether the requirements documents should be produced in a secure electronic format to be reviewed by Plaintiff's counsel and expert(s) at their offices or should only be produced for review at Honeywell's facility in Redmond, WA**

Plaintiff asserts that Honeywell's "numerous conditions and limitations . . . [on] . . . the information produced in Redmond . . . are . . . contrary to basic precepts of discovery and will drastically lengthen . . . [the] . . . review process." (Ex. C, p. 8) More particularly, Plaintiff maintains that Honeywell's "version of the protective order [that] seeks to impose a limitation on copying and printing without either Honeywell's consent or Court order . . . will . . . necessitate additional motion practice and court intervention . . . ." ( Ex. C, p. 8) Plaintiff argues that "[a]ll of the . . . delay . . . would be avoided if the relevant portions of the Requirements Documents are produced in a secure electronic format with accepted protection put in place . . . ." (Ex. C, p. 8) Honeywell responds that, "[g]iven there is no dispute that the SRD, SDRD and source code contain highly sensitive trade secrets, keeping these materials in Honeywell's facility is consistent with the protection Honeywell sought during the motion to compel proceedings." (Ex. C, p. 10)

The Magistrate Judge wrote the following in his August 17, 2016 order pertaining to the

7

initial discovery of :

> Inasmuch as it appears the specific source code requested by plaintiff cannot be run in isolation, *i.e.*, without an executable version of the entire -212 software, and inasmuch as an executable version of the entire -212 software cannot be run on a PC (Doc. 89, pp. 4-5), the protective order shall provide that the evaluation of the source code requested by plaintiff be at a designated Honeywell facility. Moreover, since the evaluation of the source code requested by plaintiff is to be conducted at a Honeywell facility, discovery of the documentation at issue shall be at the Honeywell facility as well.

(Doc. 92, p. 1)(bold added) Although the statement above provides that initial discovery of the documentation at issue would occur at/during the on-site evaluation of the source code, the Magistrate Judge did not intend to foreclose the possible need for follow-on, off-site discovery with respect to that documentation.

Honeywell's response to Plaintiff's request for discovery in the redlined draft of the protective order – attached at Exhibit C – is entirely too restrictive. Honeywell's right to protect its trade secrets must be balanced with Plaintiff's right to conduct discovery in the prosecution of his case. Accordingly, the protective order has been modified to allow for the production of documents for off-site evaluation with appropriate safeguards to protect Honeywell's trade secrets.

**5) Whether Plaintiff's simulation testing at Honeywell's facility, as agreed to by the parties, should be limited to two business days.**

Paragraph 6.k of the redlined draft protective order provides that "[t]he activities set forth in Paragraphs 6.2.f through 6.2.j are limited to two business days, unless the parties agree to additional time or the Court orders additional time." The redlined draft protective order deletes paragraph 6.k in its entirety. Plaintiff does not propose an alternative time limit. Plaintiff asserts only that they "do[] not know precisely how long all of th[e] tests will take . . . ." Honeywell does not address the issue in the joint statement.

8

The Magistrate Judge concurs that two business days are insufficient to conduct Plaintiff's simulation testing. Absent alternative recommendations from either Plaintiff or Honeywell, the simulation testing at issue shall not exceed ten (10) business days exclusive of any pre- or post- on-site preparation/document review, or simulation testing time lost due to circumstances beyond Plaintiff's control including, but not limited to circumstances such as simulator down time, unforeseen technical problems/delays, etc. The effect of time lost due to motions practice arising from on-site discovery disputes will be construed against the non-prevailing party. The total on-site time for the production/inspection of documents and simulation testing covered by this protective order shall not exceed twenty (20) days – four (4) calendar work weeks – without prior agreement of the parties or order of the Court.

**ENTERED** this the 10th day of November, 2016.

/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge