UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILE DIVISION

| | |
|---|---|
| BRET TUCKER FANNING, ET AL., | |
| Plaintiffs, | Case No. 3:14-1650 |
| v. | Judge Campbell<br>Magistrate Judge Brown/Newbern |
| HONEYWELL AEROSPACE, a division of Honeywell International, Inc.; and HONEYWELL INTERNATIONAL, INC., | |
| Defendants. | |

**MEMORANDUM AND ORDER**

By Order entered September 26, 2016, Magistrate Judge Brown recused himself from consideration of a Motion for Extraordinary Relief filed in this case by nonparty United Parcel Service Co. (UPS). (Doc. No. 103.) Thereafter, UPS's Motion for Extraordinary Relief (Doc. No. 97) was assigned to the undersigned Magistrate Judge for disposition. By this motion, UPS seeks to be relieved of its continuing burden of preserving aircraft wreckage which the parties may use as evidence in the trial of this case. Plaintiff Bret Fanning and Defendant Honeywell International, Inc. (Honeywell) have filed responses to UPS's motion. (Doc. Nos. 104, 105.) UPS replied (Doc. No. 116), and the parties filed a joint sur-reply (Doc. No. 120). Upon consideration of these filings and for the reasons given below, the Court will **GRANT** UPS's motion.

**I. Facts Underlying the Motion**

This lawsuit arises from the August 14, 2013 crash of an aircraft registered as FAA N155UP and being operated as UPS Flight 1354. Plaintiff's decedent, Shanda Fanning, was the

First Officer on board UPS Flight 1354, and was employed by UPS in that position. The estate of Cerea Beal, Captain on board UPS Flight 1354, has filed a companion case in the United States District Court for the Middle District of Alabama. *Beal v. Honeywell Int'l Inc.*, No. 2:15-cv-580-WHA-GMB. The *Fanning* and *Beal* lawsuits seek to impose liability on Honeywell based on the failure of the aircraft's Enhanced Ground Proximity Warning System (EGPWS), which Honeywell designed and manufactured. (Doc. No. 1, PageID# 2.) UPS settled all claims made against it arising out of the crash of Flight 1354 to the satisfaction of all claimants. (Doc. No. 99, Dec. of Gary Halbert, Esq., PageID# 1197 at ¶ 2.) Since the time of the accident, and after the resolution of all claims against it, UPS and its insurer have paid for storage of all remaining aircraft wreckage.

In September 2015, UPS contacted counsel for Fanning, Beal, and Honeywell to determine how much of the wreckage needed to be preserved as evidence in the continuing litigation between them. (*Id.* at ¶ 3.) Fanning and Beal quickly responded that only the EGPWS unit needed to be preserved; this unit is the size of a small suitcase and does not require significant expense to store. (*Id.*, PageID# 1197–98 at ¶ 4.) Honeywell responded that it would require an inspection of the wreckage before identifying what to preserve. (*Id.*, PageID# 1198 at ¶ 5.)

On February 17, 2016, the parties inspected the wreckage. Each party brought an expert and documented the process photographically. (*Id.* at ¶ 7.) Following the inspection, Honeywell asserted the need to preserve the entire cockpit section and attached fuselage (the fuselage forward of the wings), along with nine plastic storage tubs of components and debris. (*Id.* at ¶ 8.) These items are large, and their storage requires rental of hangar space. (*Id.*, PageID# 1199 at ¶ 9.) Since September 2016, UPS and its insurer have rented hangar space to store the wreckage at a rate of $6,000.00 per month. (Doc. No. 100, Aff. of Sara S. Martineson, PageID# 1213 at ¶ 3.) They have been unable to persuade Honeywell to assume the cost and responsibility of storing the wreckage,

except insofar as Honeywell has agreed to pay its pro rata share in a cost distribution which also includes UPS, Fanning, and Beal. (Doc. No. 99, PageID# 1198 at ¶ 8.)

## II. Discussion

UPS invokes Rules 1 and 26(c) of the Federal Rules of Civil Procedure, as well as the inherent powers of this Court, in seeking relief from the continuing obligation and expense to store the wreckage of UPS Flight 1354. (Doc. No. 98, PageID# 1189, 1192–93.) Rule 1 states the purpose of the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action," and Rule 26(c) contemplates issuance of "an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" during the discovery process. Fed. R. Civ. P. 1, 26(c). But it is primarily the Court's inherent equity powers to which UPS appeals, and which Honeywell invokes in counter-proposing that the continuing expense of storing the wreckage be shared equally among itself, Fanning, Beal, and UPS. (Doc. No. 105.) Fanning does not oppose UPS's motion except to the extent that it contemplates Fanning sharing in the storage costs for any of the wreckage aside from the EGPWS unit; he therefore opposes Honeywell's counter-proposal. (Doc. No. 104.)

It is undisputed that UPS fulfilled its duty to preserve the wreckage, at its sole expense, for the two years during which a timely claim arising from the accident could have been brought against it.[1] Since the expiration of that two-year period on August 14, 2015, UPS has continued to pay the full cost of preserving the wreckage (which it would otherwise have disposed of after that date) essentially as an involuntary third-party custodian. UPS argues that this is "fundamentally unfair" inasmuch as "UPS has no stake in the pending litigation," and calls upon the broad

---

[1] UPS notes that "[t]he statute of limitations for wrongful death in Tennessee and Alabama are one year and two years, respectively." (Doc. No. 98, PageID# 1189 n.2 (citing Tenn. Code Ann. § 28-3-104(a)(1) and Ala. Code 1975 § 6-5-410(d)).

3

discretion reserved to the courts to protect non-parties from undue burden and expense in cooperating with a party's discovery requests. (Doc. No. 98, PageID# 1192–94 (citing, *e.g.*, *Heartland Jockey Club Ltd. v. Penn Nat'l Gaming, Inc.*, No. 2:09-cv-804, 2009 WL 5171829, at *4 (S.D. Ohio Dec. 21, 2009)).

In response, Honeywell urges that having the storage expense shared equally by all interested parties, including UPS, "is the simple, equitable and fair solution, which also affords UPS the relief it seeks." (Doc. No. 105, PageID# 1222.) Honeywell first argues that UPS is an "interested party" and should share in the storage expense because it is the owner of the wreckage. (*Id.*) In their joint sur-reply, the parties repeat the argument that this ownership interest carries with it the legal obligation to preserve the wreckage, and claim that "this legal obligation is consistent with the custom and practice in aviation accident cases, where the aircraft owner, and/or its insurer, maintains a duty to pay for the wreckage absent any agreement to the contrary[;] . . . whenever such an agreement is made, it is always prospective" and does not provide for sharing of storage costs previously incurred. (Doc. No. 120, PageID# 1337–38.)

However, the parties cite no authority to support this assertion. The general proposition that the owner must pay for storage of the wreckage until such time as a cost-sharing agreement can be reached makes perfect sense where the aircraft owner shares or may potentially share the evidentiary need for the wreckage. However, once this concern is eliminated and proper notice has been given to interested parties, forcing an owner to retain possession of the wreckage and continue paying storage costs is an undue restraint on its ownership interest in disposing of its property as it sees fit. "Even in those jurisdictions that recognize a tort claim for spoliation of evidence, the courts have acknowledged that '[t]he scope of the duty to preserve evidence is not boundless.' Simply put, a 'potential spoliator need do only what is reasonable under the circumstances.'"

4

*Sterbenz v. Attina*, 205 F. Supp. 2d 65, 72 (E.D.N.Y. 2002) (quoting *Hirsch v. Gen. Motors Corp.*, 628 A.2d 1108, 1122 (N.J. Super. Ct. Law Div. 1993)). Applying this principle to facts analogous to those before this Court, the court in *Pirello v. Gateway Marina* found as follows:

> It is generally not unreasonable for the owner of a boat damaged by fire to retain it for a period and then dispose of it. Likewise, it would be unreasonable to expect the owner to store the boat indefinitely at a cost that far exceeds the value of the boat. Any of the parties could have incurred the expense of paying the outstanding storage charges to preserve the boat or transported it to a location where the storage charges could have been minimized.

No. CV 2008–1798(KAM)(MDG), 2011 WL 4592689, at *5 (E.D.N.Y. Sept. 30, 2011). Taking guidance from this authority, the Court is not persuaded that UPS's ownership of the aircraft wreckage reasonably justifies imposing any continuing obligation to contribute to the cost of storage now that its own liability has been resolved.

Honeywell argues that UPS has a direct financial interest in the outcome of this litigation because "UPS and/or one of its insurers made workers' compensation payments to Plaintiff relative to the crash of UPS Flight 1354, and thus UPS has a statutory subrogation lien against any recovery had by Plaintiff in this litigation." (Doc. No. 105, PageID# 1222 (citing Tenn. Code Ann. § 50-6-112(c)(1)). Therefore, Honeywell contends, although UPS is not currently a party to this litigation, its subrogation interest in the outcome confers a right to intervene in the litigation in order to protect that interest. Honeywell refers the Court to the case of *Cornell v. Columbus McKinnon Corporation*, No. 13–cv–02188–SI, 2015 WL 4747260 (N.D. Cal. Aug. 11, 2015). In *Cornell*, the court considered a motion by non-party Federal Express Corporation (FedEx) for attorneys' fees, costs, and expenses incurred in responding to discovery in the lawsuit between its former employee and the manufacturer of an allegedly defective product that injured the employee during the performance of his work duties. *Id.* at *1. The court denied the motion, finding that FedEx was not

the sort of disinterested discovery participant that the cost-shifting mechanism was designed to protect:

> FedEx, the "non-party" seeking relief from the cost of compliance with discovery, actually has an interest in the outcome of the case that may well be as great as that of the parties. FedEx, as plaintiff's employer at the time of the accident, has filed a lien against any judgment or settlement in plaintiff's favor in order to recoup worker's compensation benefits it has paid to him. . . . Should plaintiff prevail in this action, FedEx is likely to recover more than its cost of compliance with the parties' discovery requests. Additionally, plaintiff was a FedEx employee, working at a FedEx facility at the time of the injury. While slightly more attenuated than its direct financial interest, the outcome of this case could also affect FedEx's employee training, safety policies, and future exposure to liability.
>
> FedEx's interest in this case is therefore tantamount to that of a party, and it plausibly had standing to intervene in this action. *See* Fed.R.Civ.P. 24.

*Cornell*, 2015 WL 4747260, at *3.

In reply to this argument, UPS notes the significant distinction between its position with regard to the claims of Fanning and Beal and FedEx's position in the *Cornell* case. Specifically, UPS paid all workers' compensation claims arising out of the crash and no insurer or other third party bore any workers' compensation expense on its behalf. (Doc. No. 116, PageID# 1323–24.) Therefore, UPS asserts, it has made and will make no claim against any recovery by Plaintiff in this action. (*Id.*) UPS further clarifies that "the foregoing facts . . . apply equally to pending litigation against Honeywell by plaintiff Captain Cerea Beal in the Middle District of Alabama." (*Id.* at PageID#1324 n.2.)

In light of this proof that UPS was the sole payer of all workers' compensation payments arising from the accident and that it has relinquished any current or potential right or interest in recouping those payments, the Court finds that *Cornell* is inapposite. As to the tangential interests identified in *Cornell*—that "the outcome of the case could also affect [UPS's] employee training,

safety policies, and future exposure to liability"—the Court finds that these interests are not substantial enough to justify burdening UPS with any further preservation expenses.

In bearing the full cost of preserving the wreckage during the period in which claims against it might have been timely filed and for the fifteen months since that period expired, during which time UPS accommodated Honeywell's request for an inspection of the wreckage by all parties and their experts, UPS has more than fulfilled its obligation of preserving the evidence. In *Arch Insurance Company v. Broan-Nutone, LLC*, the court addressed a situation where a nonparty with "no claim for damages . . . and no intention to bring or join a lawsuit against Broan-Nutone" had been left in possession of potential evidence, and destroyed that evidence rather than continuing to accrue storage fees. No. 09–319–JBC, 2011 WL 3880514, at *2 (E.D. Ky. Aug. 31, 2011). The court found that the nonparty had "no duty to continue paying storage fees on behalf of other parties who might pursue litigation," but found it incumbent upon a reasonable litigant to "have taken an affirmative step to ensure that the evidence around which its theory of liability is centered would be preserved until trial." *Id.* at *2–3. Here, as in *Arch Insurance Company*, the Court finds that the nonparty possessor of other parties' evidence is under no obligation to pay any continuing costs of storage. The Court further finds that UPS has taken all reasonable steps to afford the parties an opportunity to preserve this evidence as they see fit. Accordingly, this Court will exercise its equitable powers and grant UPS's motion.

**III. Conclusion**

In light of the foregoing, the Court hereby **GRANTS** UPS's Motion for Extraordinary Relief. The parties shall assume custody of the components of the aircraft wreckage which they wish to preserve on or before **Tuesday, January 3, 2017**. If the parties do not assume custody of such evidence by the close of business on January 3, 2017, UPS may dispose of the wreckage as it sees fit.

It is so **ORDERED**.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge